UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 06-352-JBC

DAVID WAFFORD,                                                                                       PLAINTIFF,

V.                                       MEMORANDUM OPINION AND ORDER

MICHAEL J. ASTRUE, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,                                                   DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") (DE 11, 13). The court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

I. Overview of the Process

Judicial review of the ALJ's decision to deny disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v.*

1

*Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The court does not try the case *de novo* or resolve conflicts in the evidence; it also does not decide questions of credibility. *See id.* Rather, the ALJ's decision must be affirmed if it is supported by substantial evidence, even though the court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. At Step 1, the ALJ considers whether the claimant is performing substantial gainful activity; at Step 2, the ALJ determines whether one or more of the claimant's impairments are "severe"; at Step 3, the ALJ analyzes whether the claimant's impairments, singly or in combination, meet or equal a listing in the Listing of Impairments; at Step 4, the ALJ determines whether the claimant can perform past relevant work; and, finally, at Step 5 – the step at which the burden of proof shifts to the Commissioner – the ALJ determines, once it is established that the claimant cannot perform past relevant work, whether significant numbers of other jobs exist in the national economy which the claimant can perform. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520.

**II. The ALJ's Determination**

At the time of review, the plaintiff was a forty-five-year-old male with a ninth- grade education. AR 18. He alleges disability due to seizures and a bipolar disorder. AR 71. The plaintiff filed his claim for DIB and SSI on March 5, 2003,

which was denied initially and on reconsideration. AR 17. After a hearing held on January 25, 2005, Administrative Law Judge ("ALJ") Charles J. Arnold determined that the plaintiff did not suffer from a disability as defined by the Social Security Act. AR 17. At Step 1, the ALJ determined that the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. AR 25. At Step 2, the ALJ found that the plaintiff had severe impairments of cervical bulging discs, bipolar disorder, anxiety, personality disorder, and arthritis. AR 19, 26. The ALJ then determined that the plaintiff's impairment did not meet or equal a listing in the Listing of Impairments at Step 3. AR 26. At Step 4, the ALJ found the plaintiff unable to perform past relevant work. AR 26. Finally, at Step 5 the ALJ found that with the plaintiff's residual functional capacity ("RFC"), jobs that the plaintiff can perform exist in a significant number in the national economy, and the ALJ therefore denied the plaintiff's claims for DIB and SSI. AR 26, 27. The plaintiff appealed to the Appeals Council, his appeal was denied, and he commenced this action.

**III. Legal Analysis**

The plaintiff's main argument is that the ALJ's findings were not supported by substantial evidence in the record. More specifically, the plaintiff asserts that the ALJ erred in finding that prior to July 1, 2001, the plaintiff's medically determinable impairments were non-severe and that the ALJ failed to give proper weight to the state agency physicians and his treating psychiatrist. The court will

look at each of those arguments in turn.

### A. Date of Disability

In order to be eligible for disability insurance benefits under Title II of the Social Security Act, a plaintiff bears the burden to prove his disability by showing he suffered from a severe impairment on or prior to the expiration of his insured status. *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988). "A severe impairment is one which significantly limits physical or mental ability to do basic work activities." *Colvin v. Barnhard,* 475 F.3d 727, 730 (6th Cir. 2007). The ALJ found that the plaintiff did not have a severe impairment prior to the expiration of his disability insured status on June 30, 2001, and that the plaintiff therefore was not entitled to Title II benefits. AR 26. A review of the record indicates the plaintiff failed to meet his burden in establishing the presence of a severe physical or mental impairment prior to the expiration of his disability insured status. The plaintiff points to evidence of a negative CT scan and diagnoses of headache, nausea and vomiting, diarrhea, and contact dermatitis in July 2000 (AR 193-195); however, mere diagnosis of an impairment does not establish the severity of its effect upon the ability to perform basic work activity. *Higgs,* 880 F.2d at 863. Additionally, the plaintiff refers to his psychiatric hospitalization in December 1998. AR 296. The ALJ noted this hospitalization in his findings, but he also indicated the evidence was insufficient to establish a severe mental impairment, as it failed to

meet the duration requirement for a severe impairment.[1]  AR 19, 297, 298.  The plaintiff also contends the ALJ ignored the findings of state agency physician Dr. Anzures, who noted the plaintiff's seizures were present before June 30, 2001. AR 250.  Although the ALJ did not specifically cite this assessment, he did state he must consider all the medical opinions, and he referenced Social Security Ruling 96-6p, the ruling dealing with the consideration of nonexamining state agency physicians.  AR 23.  An ALJ is not bound by any findings made by state agency consultants; however, "unless the treating source's opinion is given controlling weight, the ALJ must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant"  20 C.F.R. § 404.1527. Although the ALJ should have provided his reasons for rejecting Dr. Anzures's statement that there were seizures before June 30, 2001, the court deems this omission a harmless error.  A district court may look to any evidence in the record, even that not cited by the ALJ, to see whether the ALJ's findings are based upon substantial evidence, even if the ALJ failed to cite the report in his conclusion. *Heston v. Comm'r of Social Sec.,* 245 F.3d 528 (6th Cir. 2001).  In addition, "the opinions of State agency medical and psychological consultants and other program

---

[1] In order to be "severe", the impairment must be expected to last for a continuous period of not less than 12 months.  20 C.F.R. § 404.1509.  Although the instant plaintiff was hospitalized for an attempted suicide prior to the expiration of his insured status, he denied suicidal and homicidal ideation and stated he cut his arm to get out of court.  This hospitalization fails to establish a severe impairment expected to last for a period of not less than 12 months.

physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record." Social Security Ruling 96-6p. The plaintiff stated to his doctor that he had recently begun to have seizures on July 21, 2000, yet the doctor did not include this in his diagnosis.[2]  AR 193.  Opinions from medical sources who examined the claimant are generally given more weight than opinions from sources who never examined the claimant.  20 C.F.R. § 404.1527(d)(1).  Thus, there is substantial evidence for the ALJ's finding that there were no severe impairments prior to June 30, 2001.  Reversal of the ALJ's decision that no severe impairments existed prior to June 30, 2001, is not mandated, because the ALJ's finding is supported by substantial evidence. Furthermore, the failure to discuss Dr. Anzures's statement is harmless error because even if the plaintiff had a severe impairment prior to June 30, 2001, the ALJ continued with the evaluation process for the plaintiff's SSI claim and determined that the plaintiff could perform other work that exists in the national economy in significant numbers.

### B. Weight Given to State Agency Physicians and Treating Psychiatrist

The plaintiff argues the ALJ failed to accord proper weight to the opinion of

---

[2] Other seizure references prior to June 30, 2001, seem to stem from the plaintiff's statements to his doctors.  On 1/4/02, the doctor noted the plaintiff reported a history of seizures dating from 1999, but he was not taking his seizure medication.  AR 189.  On 1/3/02, the doctor stated the plaintiff had been off his medications for seizure disorder for 6-7 months.  AR 462.  In February 2003, the plaintiff stated to Dr. O'Neill that he had been placed on Tegretol which had controlled his seizures for two years.  AR 450.

his treating psychiatrist and state agency physicians. Although the ALJ did not specifically cite these opinions in his findings, two RFC assessments are contained within the administrative record. The first, dated July 31, 2003, was completed by Dr. James T. Ramsey, who opined, after reviewing all the evidence in the file, that the plaintiff has had a seizure disorder for several years and his CT and EEG were within normal limits. AR 169. Dr. Ramsey stated that there were no other physical impairments, and that the only limitation was to avoid even moderate exposure to hazards (machinery, heights, etc.). AR 172. The second, dated January 23, 2004, was completed by Dr. H.T. Anzures, who affirmed the previous RFC but concluded the plaintiff should avoid all exposure to hazards due to his seizure disorder. AR 246. The ALJ's failure to mention these opinions runs afoul of the Social Security Rulings;[3] however, an examination of the record reveals that substantial evidence supports the ALJ's decision to omit this limitation from his RFC assessment.

First, while Dr. Ramsey and Dr. Anzures found the plaintiff had no exertional

---

[3] ALJ's must consider findings of state agency medical consultants or other program physicians as opinion evidence. 20 C.F.R. § 404.1527(f)(2)(i); 20 C.F.R. § 416.927(f)(2)(i). "Although the administrative law judge and the Appeals Council are responsible for assessing an individual's RFC at their respective levels of administrative review, the administrative law judge or Appeals Council must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians or psychologists. At the administrative law judge and Appeals Council levels, RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s)." Social Security Ruling 96-6p.

limitations, the ALJ found the plaintiff had the RFC for light work;[4] thus he found the plaintiff less capable than the two doctors opined. AR 23. Second, the ALJ did consider the medical evidence of seizures, as he addressed the seizures in his findings. Specifically, the ALJ noted that "[d]espite fairly unremarkable findings and no evidence of other than one witnessed 'black out' episode, medications . . . had been provided for preventive purposes." AR 20.[5] He noted the medical studies failed to demonstrate the etiology of the episodic blackouts. AR 20. The ALJ also noted that because the plaintiff is "maintained on appropriate medications" for his blackout episodes, it is considered a non-severe impairment. AR 24. Despite Drs. Ramsey and Anzures's opinions that the plaintiff should avoid all hazards, the

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Neither Dr. Ramsey nor Dr. Anzures found any limitations in the amount of weight the plaintiff could lift or carry. AR 169, 243.

[5] In addition to the previously mentioned medical records, *supra* note 2, a review of the record indicates that while doctors stated the plaintiff may have seizure disorder, no limitations or restrictions were prescribed by any of the plaintiff's doctors. In March 2002, the doctor noted a history of seizure disorder, but the plaintiff had not had a seizure for several months, so she did not place him back on his medications for seizures. AR 459. In February 2003, the plaintiff stated there was only one witnessed episode of a seizure. AR 450. On that date the doctor wanted to start the plaintiff back on Tegretol because she thought the blackout episodes sounded like seizures. AR 450. On March 21, 2003, Dr. Cecil reported that the plaintiff had no episodes of the blackouts once he began taking Tegretol. AR 448. On June 16, 2003, the plaintiff stated that his seizures were partially controlled by Tegretol. AR 142. There was a medical file containing a comment on October 22, 2003, that there was no objective seizure diagnosis, so the plaintiff was advised to stop taking Tegretol. AR 434. On December 7, 2004, the plaintiff testified that he did not take any medication for his blackouts. AR 506.

8

evidence is not consistent with this assessment. The ALJ noted that the plaintiff not only drives and mows the lawn, but he also has no limitations or restrictions from his treating physicians. AR 21, 22, 97, 139. The duty to resolve conflicts in the record rests with the ALJ. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). The court finds the ALJ's failure to specifically mention these doctors' opinions in his written decision was harmless error, as the ALJ did discuss the blackouts and seizures within his findings. The ALJ's RFC assessment is supported by substantial evidence in the record, and the court will not disturb it.

    In addition to the RFC assessments, the file contains a medical assessment of the plaintiff's ability to do work-related activities completed on March 2, 2005 by a Bluegrass Clinic staff psychiatrist. AR 464. The plaintiff contends the ALJ failed to accord proper weight to this opinion. Ordinarily, a treating psychiatrist's opinion is entitled to "substantial deference" so long as it is supported by objective medical evidence, but the ALJ is not necessarily bound by that opinion. *Jones v. Comm'r of Social Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Provided that the ALJ "sets forth a reasoned basis for [the] rejection," *Jones*, 336 F.3d at 477, the ALJ may reject the treating physician's opinion if it is inconsistent with other evidence in the record. *Warner v. Comm'r of Social Sec.*, 375 F.3d 387, 391 (6th Cir. 2004). In this case, although the ALJ adopted the medical assessment where the psychiatrist "rated the [plaintiff] with a 'fair' ability in a majority of mental domains as they relate to making occupational, performance, and personal/social

9

adjustment," he declined to adopt the psychiatrist's opinion that the plaintiff has no useful ability to deal with work stresses or to demonstrate reliability. AR 22. Instead, after a review of the record, the ALJ found the plaintiff did not demonstrate the limitations as the psychiatrist described, and he found the plaintiff had a fair (seriously limited, but not precluded) ability to deal with work stresses and to relate to others. AR 22, 23, 146. The ALJ noted that the plaintiff's daily and social functioning are not reflective of a totally incapacitated individual. AR 22. Additionally, certain findings by the psychiatrist were inconsistent with the record as a whole.[6] The court finds substantial evidence exists to support the ALJ's decision to reject portions of the psychiatrist's assessment.

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** that the Commissioner's motion for summary judgment (DE 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 11) is **DENIED**.

---

[6] For instance, the psychiatrist noted that the plaintiff has a seriously limited, but not precluded, ability to maintain personal appearance (AR 465); however, numerous treatment notes reveal the plaintiff's appearance was within normal limits. AR 131, 252, 254, 257, 321, 327, 335, 336, 338, 340 , 342, 344, 349, 352, 353, 355, 356, 357. "Generally, the more consistent an opinion is with the record as a whole, the more weight [the ALJ] will give to that opinion." 20 C.F.R. § 404.1527; 20 C.F.R. 404.927 (If any evidence in the plaintiff's case record is inconsistent with other evidence or is internally inconsistent, the ALJ will weight all of the evidence to determine whether the plaintiff is disabled.).

Signed on  February 6, 2008

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCY